AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Eastern District of New York

| | |
|---|---|
| MICHAEL ALLEN BAILEY <br><br> *Plaintiff(s)* <br> v. <br> HOFSTRA UNIVERSITY <br><br> *Defendant(s)* | ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* Hofstra University
1000 Hempstead Turnpike
Hempstead, New York 11549

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: Antoinette L. Williams, P.C.  P.O. Box 8556 Pelham, N.Y. 10803

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

DOUGLAS C. PALMER
*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Docket No.:

MICHAEL ALLEN BAILEY

**COMPLAINT**

                Plaintiff,

**JURY TRIAL**
**DEMANDED**

-against-

HOFSTRA UNIVERSITY

                Defendant.

Plaintiff, by and through his attorney, Antoinette L. Williams, P.C., as and for his Complaint against Defendant, alleges as follows:

### NATURE OF THE CASE

1. Plaintiff Michael Allen Bailey brings this action alleging that Defendant violated Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §1981 and §1983 *et seq.*, 42 U.S.C. §2000, *et seq.*, and the New York State Human Rights Law, N.Y. Exec. Law §290 *et seq.*, and the American with Disabilities Act of 1990, 42 U.S.C. §§121010 to 12213 and seeks damages to redress the injuries he suffered as a result of being discriminated against on the basis of his race, sexual orientation, disability, unlawfully retaliated against and harassed and created a hostile school and educational environment.

### JURISDICTION AND VENUE

2. Plaintiff, Michael Allen Bailey is a resident of the State of New York and County of Nassau.

3. Defendant Hofstra University is a private University located in Hempstead, New York.

1

4. The Court has jurisdiction because it is proper under 42 U.S.C. §1981 and §1983 *et seq.*, 42 U.S.C. §2000, *et seq.*, and 28 U.S.C. §§ 1331 and 1343.

5. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) as it is a judicial district in which the actual events or omissions giving rise to the claims occurred.

## THE PARTIES

6. At all relevant times hereinafter mentioned, Plaintiff Michael Allen Bailey (hereinafter "Plaintiff Bailey") is an African American male with a recognized disability residing in the State of New York. Plaintiff has a speech impediment which causes him to stutter.

7. At all relevant times hereinafter mentioned, Defendant Hofstra University (hereinafter "Defendant Hofstra") is a private University in Hempstead, New York offering undergraduate and graduate programs and academic degrees to enrolled students.

## STATEMENT OF FACTS

8. Plaintiff Bailey enrolled and was accepted as a student by Defendant Hofstra in September 2017. Plaintiff majored in and sought a Bachelors of Science degree in Music Composition Theory. Plaintiff minored in Film/TV and Radio and Creative Writing.

9. In September 2017, the annual MUS20 meeting was held in the Helene Fortunoff Theater with more than 100 students in attendance. Plaintiff Bailey approached, Dr. David Lalama and asked to join his Big Band. Dr. Lalama responded by telling the Plaintiff to come back when he had more bass in his voice and ridiculed Plaintiff due to his high voice. Dr. Lalama further denigrated Plaintiff by telling him that he could be in his "SCUM" Jazz Band. "SCUM" is the name that Dr. Lalama gives to students who he considers play jazz at a lower level. The comments were made in the presence of other students who laughed.

10. Plaintiff informed the Music Secretary (Pat Newberg) and the Music Department Chair

2

(Professor Philip S. Stoecker) of the incident. Despite Plaintiff's complaints, Dr. Lalama was not reprimanded. Plaintiff was told to ignore the comments and that Dr. Lalama had made similar comments in the past. Plaintiff was also made to feel as if he was being overly sensitive due to the fact that he was a freshman.

11. Plaintiff Bailey's speech impediment causes him to stutter. Plaintiff was told by Professor Lisa Beherns that stuttering was not a real disability. Plaintiff's speech impediment is exacerbated by fear and anxiety, which Defendant constantly inflicted upon Plaintiff. Professor Beherns also denied that Plaintiff was being mistreated due to his speech impediment. On another occasion, Professor Beherns questioned Plaintiff's religious views and his faith. Professor Beherns would yell at Plaintiff, discourage him from asking questions and seeking assistance with assignments.

12. Despite not receiving any support thus far, Plaintiff continued to complain about the maltreatment. Plaintiff then sought support from Music Composition Advisor, Dr. Lee Carter. Dr. Carter informed the Plaintiff that the events complained of did not occur and made excuses for Professor Beherns' comments. Dr. Carter also discouraged Plaintiff from applying for internships and advised that he was not suited for internships.

13. Plaintiff Bailey began to withdraw and suspected that the treatment he was experiencing was due to his race, sexual orientation and speech impediment. Plaintiff's fears of racial discrimination were confirmed by another Dr. Adem Birson who confided in Plaintiff that he had also experienced racial discrimination from his colleagues. When Plaintiff applied for a scholarship, Dr. Adem Birson provided a letter of recommendation for Plaintiff and made reference to the treatment that Plaintiff endured due to his race.

14. Plaintiff also made complaints to Music Secretary Pat Newberg during his freshman year.

3

The music secretary assured Plaintiff that everything would be okay, but then was overheard disparaging Plaintiff and laughing at him with others. On a separate occasion, Plaintiff needed a school's soprano saxophone repaired in order to continue performing in a music ensemble. Music Secretary Newberg directed Plaintiff that he had to make certain phone calls in order to get the instrument repaired. However, other students simply left their instruments in the Music Office if a repair was necessary. Plaintiff was caused to take steps that other students were never required to take. Plaintiff believes that such treatment was due to his race and sexual orientation.

15. Plaintiff felt compelled to join Dr. Lalama's "SCUM" Jazz Band to fulfill a requirement and after being counseled by his saxophone teacher, Alejandro Aviles. Dr. Lalama constantly stated that due to his tenure, he could say whatever he wanted.

16. Dr. Lalama would embarrass and harass the Plaintiff publicly and privately as well. Dr. Lalama publicly asked Plaintiff if he was dating one of the male saxophone players. The question was inappropriate, harassing and discriminatory. The comments regarding Plaintiff's sexuality were ongoing. The comments were explicit as well as implicit.

17. Dr. Lalama also made comments suggesting that because of his race, Plaintiff should know how to play Jazz and that Plaintiff should know his roots. Plaintiff was told that because he was black, he was expected to know about Jazz and improv. Dr. Lalama expected Plaintiff to conform to a stereotypical image. Dr. Lalama's comment suggested that Plaintiff was not "black enough."

18. During his sophomore year, Plaintiff was compelled to have Dr. Lalama as a Professor. Plaintiff had composed a song and after hearing the song, Dr. Lalama reluctantly agreed to be his Professor. On the advice of other staff members, Plaintiff agreed because they thought it was in his best interest.

19. Dr. Lalama instructed Plaintiff to learn a fugue. A fugue is a very complex music composition that requires intense study to execute accurately. Once it was completed, Plaintiff was told to orchestrate it and Dr. Lalama recommended a four hand piano arrangement. Plaintiff suggested an alternative and as a result, Dr. Lalama refused to work with Plaintiff. Plaintiff was forced to recruit players, schedule, conduct and lead rehearsals without any assistance. In contrast, other students were assisted by Dr. Lalama in completing their pieces and recitals. Dr. Lalama flatly refused to assist Plaintiff.

20. Plaintiff sought counseling at the Student Health and Counseling Center due to the maltreatment and abuse. Plaintiff began experiencing anxiety, panic attacks, nausea and vomiting as a direct result of the Defendants' misconduct.

21. Plaintiff made many attempts to having his film score shown at Hofstra. His efforts were met with resistance and discouraged. Eventually, Plaintiff was granted permission to present his film score but was specifically told that he was responsible for providing all equipment and no support would be provided. A short time later, another composer who was white, became aware that Plaintiff was showing his film score. The student made a similar request to show his film score. His request was immediately granted and he was not subject to the same treatment that Plaintiff underwent to get permission to show his film score.

22. In May 2019, Plaintiff met with Dr. Lee Carter, Dr. David Lalama and Professor Adam Glaser. The purpose of the meeting was to review the Plaintiff's choice of major. Plaintiff used the opportunity to discuss the discriminatory behavior and conduct that he experienced over the past two years. Plaintiff was belittled and accused of being dramatic and paranoid. Plaintiff was told that he was "doing a Michael, again." Plaintiff's name was reduced to a verb and he was simultaneously labeled as "paranoid," "hysterical," and "overly dramatic."

5

23. In addition to the aforementioned, Plaintiff Bailey was also caused to pay a higher lesson fee than a white student. Said student was taking "P level" music lessons, while Plaintiff was taking "B level" music lessons. Plaintiff was charged $900 for "B level" lessons. The white student's music lesson fee was significantly lower than what Defendant Hofstra billed Plaintiff. "B level" music lessons should have been less than "P level" music lessons. Plaintiff contacted Music Secretary Pat Newberg who confirmed that the amount that Plaintiff was paying was correct. Plaintiff then contacted the Music Chair, Professor Stoecker who also confirmed that the Plaintiff was not being over charged. However, after the Professor reviewed Plaintiff's statement in the portal, the Dean was contacted. Two months after acknowledging the erroneous charge, Plaintiff's lesson fee was reduced by $437.00.

24. Plaintiff's ambitious ideas were thwarted and he was denied the use of space and equipment by Defendants' staff and agents. Defendants would needlessly reprimand and chastise him for conduct that other students were not reprimanded nor chastised. Plaintiff was repeatedly forced to learn on his own without staff assistance, whereas, other students were assisted.

25. Plaintiff was expected to assist other students with their performances and witnessed Professors who either would not help him or was reluctant to help him, while assisting those students as well.

26. Plaintiff was awarded an annual scholarship in the sum of $600 two semesters of his senior year, however, other students were awarded $5000 scholarships. Plaintiff addressed the gross disparity to the Deans and other staff. The disparity was acknowledged but the rationale given to Plaintiff, was that the disparity existed due to funding. Additionally, Plaintiff's

6

scholarship was delayed and he had to fight months for it and confirm that it was actually awarded to him.

27. During his senior year, Plaintiff's GPA made him eligible to graduate with honors distinction. The Music Department neglected to inform Plaintiff of same. Plaintiff was informed by his peers of his eligibility to graduate with honors. Plaintiff emailed Dr. Lee Carter, Head of the Composition Department, who then advised Plaintiff that he had to write an Honor Thesis to receive Honors Distinction.

28. Dr. Carter admitted that the Music Department had failed to inform the Plaintiff of the requirements and informed him that there was not enough time to meet the requirement. Plaintiff was unfairly disadvantaged because other students had a year to complete the Honor Thesis. Plaintiff's disadvantage was due to the Defendants intentional oversight. Defendants did not fail nor neglect to inform any other student about the honors distinction and the thesis requirement.

29. Plaintiff reached out the Title IX Officer, Allison Vernace regarding his claims. Ms. Vernace indicated that she would be investigating Plaintiff's claims, but was brushed off by Ms. Vernace. Ms. Vernace indicated that she would be happy to meet with the Plaintiff but scholarship issues and bias related incidents would fall under the Provost's Officer and Cornell's area as the CDIO. No meeting was ever scheduled with Ms. Vernace or any member of her staff.

30. During his senior year, Plaintiff contacted Vice Provost Stavros Valenti regarding the discriminatory treatment that he endured during his time at Hofstra. Plaintiff's complaints were ignored or met with indifference or Plaintiff was blatantly told that Defendant could not and would not address his complaints. On one occasion, Dean Benjamin Rifkin informed the Plaintiff that he could not fix years of racism and that it was unfair of the Plaintiff to make that request.

31. Vice Provost Valenti mocked Plaintiff and told him that he could file a discrimination lawsuit but that it would be too expensive for him and that he should accept diversity training for the staff. Plaintiff was also told that he needed to have others vouch for his claims of discrimination before he could be taken seriously.

32. Plaintiff did in fact compile a list of students willing to attest to Plaintiff's claims. Other students expressed fear of retaliation if they helped Plaintiff. The list was delivered to Vice Provost Valenti who then informed the Plaintiff that Human Resources would not permit him to contact the students.

33. Defendant Hofstra contends that an investigation was conducted into Plaintiff's claims and the result was that the numerous claims were unfounded. Any investigation conducted was done internally by the Defendants which cannot be verified as neutral or unbias.

34. During his senior year, Plaintiff requested the use of the Hofstra ensemble for his capstone and was denied, although in the past, other students' requests for use of the Hofstra ensemble was granted.

35. Plaintiff also requested and was denied the use of Professor Adam Glaser's orchestra. Professor Glaser had permitted other students the use of the orchestra. Plaintiff's denial was arbitrary and capricious. Additionally, other students were permitted to use the large performance groups, orchestras and choirs while Plaintiff was denied. When Plaintiff provided the names of those students to Dr. Lalama, his response was that "those students are different."

36. Plaintiff was subjected to homophobic and racist remarks in and outside of the classroom. Defendant took no action to stop the maltreatment. Despite fear of retaliation, Plaintiff continued to make verbal and written complaints to Defendant, to no avail.

37. Plaintiff had an idea for Spring Pop Up concerts. During the implementation, Plaintiff's

8

efforts were met with resistance and he was forced to resign due to mental health reasons. Despite working hard on the project, Plaintiff received a rude email from Dr. Cindy Bell. The email was written on behalf of four other teachers and embarrassed the Plaintiff and expressed their desire take the concert series away from the Plaintiff. Thereafter, Plaintiff received a copy of a mass email written by the Orchestra Director giving credit to Orchestra Manager Elisa Mongo, who is white, for organizing and arranging the Pop-Up concert.

38. Plaintiff contends that he was not extended an offer to have his music recorded based on race. Plaintiff was never offered an opportunity to showcase his music. Professors came into help with the rehearsals and recording sessions in person and via zoom. Plaintiff was denied assistance while white student readily received assistance. The Director Pat Spencer admitted that some of the student performers were not ready and should not perform because the Composer's Lab group was disbanded and cut from the budget.

### FIRST CAUSE OF ACTION AGAINST DEFENDANT HOFSTRA (DEPRIVATION OF RIGHTS IN VIOLATION OF 42 U.S.C §1981)

39. Plaintiff Bailey repeats and realleges Paragraphs ¶¶ 1-38 set forth above as if fully set forth herein at length.

40. Plaintiff Bailey is an African American male and is a member of a racial minority. Defendant its agents, assigns, employees, staff and/or administrators intended to discriminate against Plaintiff Bailey on the basis of his race.

41. Plaintiff Bailey was qualified for his position as a matriculated student, resident assistant and student worker as he maintained those roles at all relevant times.

42. Plaintiff Bailey is a member of a protected class an African American student.

43. Defendant Hofstra took adverse action against Plaintiff Bailey as detailed above in the

Statement of Facts. As a result of his race, Defendant Hofstra, its agents, assigns, employees, staff and or administration failed to provide Plaintiff Bailey opportunities for which he was qualified and entitled; hindered his ability to be promoted and participate in specific programs; offered substandard positions and opportunities and denied Plaintiff Bailey the same opportunities that it afforded to other students similarly situated.

44. Defendant Hofstra's discrimination concerned one of the activities protected by the Civil Rights Act of 1964, 42 U.S.C. §1981.

45. As a result of Defendant Hofstra's unlawful and discriminatory conduct in violation of the Civil Right Act of 1964, 42 U.S.C. §1981, Plaintiff Bailey suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress, anxiety, depression, loss of self confidence and emotional pain for which he is entitled to an award of monetary damages and such other and further relief as the Court deems just and proper.

## SECOND CAUSE OF ACTION AGAINST DEFENDANT HOFSTRA
## (DEPRIVATION OF RIGHTS IN VIOLATION OF 42 U.S.C §1983)

46. Plaintiff Bailey repeats and realleges Paragraphs ¶¶ 1-45 set forth above as if fully set forth herein at length.

47. Plaintiff Bailey is an African American male and is a member of a racial minority. Defendant, its agents, assigns, employees, staff and/or administrators intended to discriminate against Plaintiff Bailey on the basis of his race.

48. Plaintiff Bailey was qualified for his position as a matriculated student and resident assistant as he maintained those roles at all relevant times.

49. Plaintiff Bailey is a member of a protected class as an African American male and student.

50. Defendant Hofstra engaged in customs and practices that denied Plaintiff Bailey of his Constitutional rights of equal protection.

51. Defendant Hofstra took adverse action against Plaintiff Bailey as detailed above in the Statement of Facts. As a result of his race, Defendant Hofstra, its agents, assigns, employees, staff and/or administration failed to provided Plaintiff Bailey opportunities for which he was qualified and entitled; hindered his ability to be promoted and participate in programs; offered substandard positions and opportunities and denied Plaintiff Bailey the same opportunities that it afforded to other students similarly situated.

52. Defendant Hofstra's discrimination concerned one of the activities protected by the Civil Rights Act of 1964, 42 U.S.C. §1983.

53. As a result of Defendant Hofstra's unlawful and discriminatory conduct in violation of the Civil Rights Act of 1964, 42 U.S.C. §1981, Plaintiff Bailey suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress, anxiety, depression, loss of self confidence and emotional pain for which he is entitled to an award of monetary damages and such other and further relief as the Court deems proper.

## THIRD CAUSE OF ACTION AGAINST DEFENDANT HOFSTRA (DEPRIVATION OF RIGHTS IN VIOLATION OF 42 U.S.C §2000)

54. Plaintiff Bailey repeats and realleges Paragraphs¶¶ 1- 53 set forth above as if fully set forth herein at length.

55. Plaintiff Bailey claims Defendant Hofstra violated Title VII of the Civil Rights Act of 1964, as these titles appear in volume 42 of the United States Code, beginning at §2000.

Title VII of the Civil Rights Act of 1964, §2000e-2, §703 "Employer Practices" states: "It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to

discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex or national origin."

56. Defendant Hofstra engaged in unlawful discriminatory practice by discrimination against Plaintiff because of his African American race. An inference of discrimination can be made based upon the disparate treatment afforded to Plaintiff Bailey's counterparts that are not African American.

### FOURTH CAUSE OF ACTION AGAINST DEFENDANT HOFSTRA (RETALIATION IN VIOLATION OF 42 U.S.C §2000)

57. Plaintiff Bailey repeats and realleges Paragraphs ¶¶ 1- 56 set forth above as if fully set forth herein at length.

58. Title VII prohibits retaliation. 42 U.S.C §2000e-3 provides:

> "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor management committee controlling apprenticeship or other training or retraining, including on the job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

61. Defendant Hofstra violated this section as set forth elsewhere herein. Defendant engaged in an unlawful employment practice by retaliating against Plaintiff Bailey following his engagement in protected activity. Defendant engaged in protected activity when he made multiple complaints against the Defendant, its agents, assigns, employees, staff and/or administrators.

12

62. As a result of Plaintiff Bailey's engagement in protected activity, Defendant Hofstra engaged in adverse action against the Plaintiff.

### FIFTH CAUSE OF ACTION AGAINST DEFENDANT HOFSTRA (DISCRIMINATION IN VIOLATION OF N.Y. EXEC. LAW §296- HUMAN RIGHTS LAW)

63. Plaintiff Bailey repeats and realleges Paragraphs ¶¶ 1- 61 set forth above as if fully set forth herein at length.

64. The New York State Human Rights Law, N.Y. Exec. Law §296 provides:

> "It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

65. Plaintiff Bailey is a member of a protected class as an African American and student. Defendant Hofstra engaged in unlawful discriminatory practice by discrimination against Plaintiff because of his African American race. An inference of discrimination can be made based upon the disparate treatment afforded to Plaintiff Bailey's counterparts that are not African American.

66. As a result of Defendant Hofstra's unlawful and discriminatory conduct in violation of N.Y. Exec. Law §296, Plaintiff Bailey suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress, anxiety, depression, loss of self- confidence and emotional pain for which he is entitled to an award of monetary damages and such other and further relief as the Court deems proper.

### SIXTH CAUSE OF ACTION AGAINST DEFENDANT HOFSTRA (DEPRIVATION OF RIGHTS IN VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS)

67. Plaintiff Bailey repeats and realleges Paragraphs ¶¶ 1- 65 set forth above as if fully

set forth herein at length.

68. Plaintiff Bailey a member of a protected class. Defendant, its agents, assigns, employees, staff and/or administrators engaged in disparate treatment, disparate impact and retaliation.

69. Plaintiff Bailey was qualified for his position as a matriculated student, resident assistant and student worker as he maintained those roles at all relevant times.

70. Plaintiff Bailey is a member of a protected class as an employee and student.

71. Defendant Hofstra engaged in customs and practices that denied Plaintiff Bailey of his Constitutional rights of equal protection.

72. Defendant Hofstra took adverse action against Plaintiff Bailey as detailed above in the Statement of Facts. Defendant Hofstra, its agents, assigns, employees, staff and or administration failed to provide Plaintiff Bailey opportunities for which he was qualified and entitled; hindered his ability to be promoted and participate in programs; offered substandard positions and opportunities and denied Plaintiff Bailey the same opportunities that it afforded to other students similarly situated.

73. Defendant Hofstra's discrimination concerned one of the activities protected by the Civil Rights Act of 1964, 42 U.S.C §1983.

74. As a result of Defendant Hofstra's unlawful and discriminatory conduct in violation of Title IX, Plaintiff Bailey suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress, anxiety, depression, loss of self-confidence and emotional pain for which he is entitled to an award of monetary damages and such other and further relief as the Court deems proper.

**WHEREFORE,** Plaintiff Bailey respectfully requests that this Court grant a Judgment against Defendant and in favor of Plaintiff:

(a) Declaring that Defendant engaged in unlawful practices prohibited by Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C.§1981 and §1983 *et seq.*, 42 U.S.C. §2000, *et seq.*, and the New York State Human Rights Law, N.Y. Exec. Law §290 *et seq.*, Title IX and the American with Disabilities Act of 1990, 42 U.S.C. §§12101 to 12213 by discriminating against Plaintiff Bailey on the basis of his race and disability and unlawfully retaliating against him;

(a) Awarding damages to the Plaintiff resulting from Defendant's unlawful, reprehensible discriminatory and retaliatory actions against him and to otherwise make him whole for any losses suffered as a result of such unlawful conduct;

(b) Awarding Plaintiff Bailey compensatory damages for mental, emotional and physical injury, distress, injury to his reputation and future endeavors;

(c) Awarding Plaintiff Bailey punitive damages;

(d) Awarding Plaintiff attorney fees, costs and expenses incurred in the prosecution of the action; and

(e) Awarding Plaintiff Bailey such other and further relief as the Court may deem just and proper.

Dated: 10/20/2021

Yours, etc.,

Antoinette L. Williams, Esq.
Antoinette L. Williams, P.C.
Attorney for Plaintiff
P.O. Box 8556
Pelham, New York 10803
(914) 844-2937
Williamslaw125@gmail.com

15

## CERTIFICATION

STATE OF NEW YORK          )
                           )ss.:
COUNTY OF NASSAU           )

I, MICHAEL ALLEN BAILEY being duly sworn, deposes and says: I am the Plaintiff in the foregoing Complaint. I have read the foregoing and know the contents thereof, the same is true as to my own knowledge except as to those matter therein stated to be alleged upon information and belief and as to those matters, I believe them to be true.

Dated: 10/20/2021

_____
MICHAEL ALLEN BAILEY

Sworn to before me this
20th day of October 2021

_____

Antoinette L. Williams
Notary Public State of New York
No. 02WI5070710
Qualified in Westchester County
Commission Expires December 23, 2022